# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA K. REEVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-404-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Patricia Kay Reeves requests review of the Commissioner of the Social Security Administration's denial of benefits pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on February 26, 1958, and was fifty years old at the time of the administrative hearing (Tr. 27-28). She has a GED and vocational training in the areas of nursing, computer technology, and private security (Tr. 29, 131), and has worked as a phone operator/dispatcher, casino clerk, pari-mutuel clerk, game machine repairer, waitress, cashier, and security guard (Tr. 22, 29-30). The claimant originally alleged that she had been unable to work since April 4, 2007 (amended from June 1, 1999 at the administrative hearing) due to a herniated disc in her neck and back, anxiety attacks, high cholesterol, and high blood pressure (Tr. 27, 125).

### Procedural History

The claimant applied on November 27, 2006 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Michael Kirkpatrick held an administrative hearing and determined the claimant was not disabled in a written opinion dated May 13, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant's severe impairments of status post L4-5 lumbar laminectomy, status post right knee meniscectomy and chondroplasty, status post right shoulder subacromial

decompression and biceps tenodesis and debridement, osteoarthritis, and hypertension did not prevent her from performing the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), *i. e.*, she could lift 20 pounds occasionally and 10 pounds frequently, and stand/walk/sit for six hours in an eight-hour workday (Tr. 16). The ALJ concluded that the claimant was not disabled because she could return to her past work as security guard, gate guard, cashier, waitress, telephone operator, radio dispatcher, pari-mutuel clerk, and game machine repairer (Tr. 22).

**Review**

The claimant's sole contention on appeal is that the ALJ erred in analyzing her credibility at step four. The Court finds that the ALJ *did* properly evaluate the claimant's credibility, and the decision of the Commissioner must therefore be affirmed.

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The record reveals that the claimant was injured in June 1999 when a filing cabinet fell on the middle of her back while at work (Tr. 597). This injury eventually necessitated L4-5 fusion surgery in March 2001, after which she proceeded through a course of physical therapy and visits to Dr. Randall Hendricks at Central State Orthopedic Specialists (CSOS). While healing from surgery, the claimant was involved in a motor vehicle accident in September 2001, but was still released to return to work on September 10, 2001 with the only restriction being an inability to lift or carry over 40 pounds (Tr. 514). In November 2001, claimant was released from medical care related to her surgery, and Dr. Hendricks noted that she had "reached maximum medical benefit" (Tr. 509).

While participating in self-defense training while attending an Oklahoma State Prison training academy in April 2007, the claimant injured her right knee when "trying to flip a particularly large lady" (Tr. 400). An MRI was taken of her injury, and she was found to have a contusion (Tr. 395). She was thereafter released to "sit down work only" (Tr. 394). After receiving little benefit from physical therapy, the claimant underwent arthroscopic surgery on her right knee on July 19, 2007 (Tr. 376). She was thereafter released to return to work on August 29, 2007 "with restricted lifting of 25 pounds" and no crawling, kneeling, or squatting (Tr. 372).

The claimant was also evaluated by Dr. Jeff Fox for a shoulder sprain in October 2007, at which time he found that she had a right shoulder strain, left shoulder strain, vague right clavicle pain, and recommended that she have an MRI of the right shoulder (Tr. 949). The MRI revealed that claimant had a "very mild grade I supraspinatus tear"

and "[m]ild degenerative changes of the AC joint without inferior down going spurs or evidence of anatomic impingement on the supraspinatus tendon" (Tr. 947). On February 26, 2008, the claimant underwent shoulder surgery (Tr. 937), and following a successful course of physical therapy, the claimant was released "at maximum medical improvement" and allowed to "return to work full duty without restrictions" on May 9, 2008 (Tr. 930). Further, Dr. Fox informed claimant at that time that "it was safe to do any job now" (Tr. 930).

The claimant testified at the administrative hearing that she was able to lift 10-15 pounds, and has trouble lifting her grandson who weighs 25 pounds (Tr. 34). She testified that she cooks meals, but "can't stand at the stove very long" because of pain in her back and legs (Tr. 35). She further testified to having good days and bad days, and that when she has good days and is able to do things around the house, she is "dead tired" the following day (Tr. 37). Finally, she testified to getting along well with other people (Tr. 37).

The ALJ summarized the medical evidence and the claimant's testimony from the administrative hearing and "considered . . . the extent to which th[e] [claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of [the relevant social security regulations and rulings]" (Tr. 17). The ALJ mentioned the claimant's L4-5 fusion surgery in 2001 but noted that she subsequently returned to gainful work activity (Tr. 17). He discussed the claimant's treatment records from CSOS, where she underwent arthroscopic right knee surgery on July 19, 2007 and right shoulder subacrominal decompression, biceps

tenodesis, and intraarticular debridement on Febraury 6, 2008 (Tr. 18). But the ALJ also noted that claimant's physicians medically released her following her knee surgery on November 21, 2007 (Tr. 790) and following her shoulder and biceps injuries on May 9, 2008 (at which time she was released "at maximum medical improvement" and at "full duty without restrictions") (Tr. 928).

The ALJ also discussed the medical evidence and made specific findings with regard to several of the factors listed in Social Security Ruling 96-7p, 1996 WL 374186. For example, he recounted the claimant's testimony as it specifically related to daily activities and considered it as a *factor* in analyzing her credibility, which is contrary to the claimant's argument that he *relied* solely on her activities of daily living. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("[T]he ALJ may not *rely* on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'") [emphasis added], *quoting Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987). The ALJ *also* considered other credibility evidence, such as the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; work history;[2] personal

---

[2] *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (finding work history properly considered as one of several factors bearing on claimant's credibility). Even though the claimant provided an explanation for her scant work history prior to her initial alleged onset date in 1999, the ALJ's credibility analysis is still supported by substantial evidence. *See Shubargo v. Barnhart*, 161 Fed. App'x 748, 753 (10th Cir. 2005) ("The fact that the [ALJ] may have missed, ignored, or misunderstood certain evidence that might support [the claimant's] claims . . . does not mandate reversal as long as, on the whole record, substantial evidence supports his credibility determination.") [unpublished opinion]. Further, the ALJ also pointed to other evidence relating to claimant's work history that damages her credibility, *i. e.*, that claimant stated in her initial

observations;[3] and any measures other than treatment used to alleviate pain or other symptoms (Tr. 17-21). The ALJ also considered the Adult Third Party Function Report submitted by claimant's husband in accordance with SSR 06-3p (Tr. 21). After considering all this evidence, the ALJ concluded "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 27).

As the foregoing demonstrates, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and he provided specific reasons for the determination in accordance with *Hardman*. While the claimant alleges that the ALJ failed in his credibility analysis as a result of "mistaken observations from the medical record," the claimant points to no specific examples. On the contrary, there is no indication that the ALJ misread the medical evidence as a whole, so his determination as to the claimant's credibility is entitled to deference. *See Casias,* 933 F.2d at 801. The Court therefore finds that the claimant's contention is without merit.

---

interview with the SSA that she had stopped working in October 2006 because of personal reasons as opposed to disabling impairments.

[3] *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("Although an ALJ may not rely solely on his personal observations to discredit a [claimant's] allegations, he may consider his personal observations in his overall evaluation of claimant's credibility."), *citing Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985). *See also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001).

Because the ALJ properly evaluated the claimant's credibility, the Court finds that the ALJ's opinion was supported by substantial evidence. Thus, the Commissioner's decision must be affirmed.

**Conclusion**

In summary, the Court finds that correct legal standards were applied, and the decision of the Commissioner is therefore supported by substantial evidence. The Commissioner's decision is accordingly hereby AFFIRMED.

**DATED** this 31st day of March, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma